way surprised by the testimony offered in behalf of the state.

[2] In his amended motion for a new trial he alleges newly discovered testimony. The testimony that is alleged to be newly discovered was known as well to the defendant before the trial as after verdict. It is alleged that the party named delivered to him a certain amount of money on the day of the alleged theft. The affidavit of the witness that she would so testify is not attached to the motion, and no reason given why the affidavit is not attached. Under such circumstances, this ground of the motion presents no sufficient reason for the granting of a new trial. Cotton v. State, 4 Tex. 260; West v. State, 2 Tex. App. 209; Love v. State, 3 Tex. App. 501.

The judgment is affirmed.

---

HOWARD v. STATE. (No. 3459.)

(Court of Criminal Appeals of Texas. March 3, 1915.)

CRIMINAL LAW &infin;419, 420 — EVIDENCE — HEARSAY.

In a prosecution for assault and battery, testimony of witnesses as to statements made to them relative to the assault, by the person alleged to have been assaulted, being hearsay, should have been excluded.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973–983; Dec. Dig. &infin; 419, 420.]

Appeal from Newton County Court; W. E. Gray, Judge.

W. W. Howard was convicted of aggravated assault and battery, and appeals. Reversed and remanded.

Forse & Hamilton, of Newton, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. The information and complaint charge appellant, who was then and there an adult male, did commit an aggravated assault and battery in and upon the person of Carrie Howard, who was a female. The evidence shows they sustained the relation of husband and wife. She did not testify in the case. There was no testimony introduced of a positive nature that appellant made any assault upon his wife. There are some circumstances from which it might be deduced that about half after 1 or 2 o'clock in the evening the voice of a female, supposed to be appellant's wife, was heard at his residence. She was screaming or making a noise. It was shown that subsequently she had some bruises on her person. Witnesses were permitted to testify to statements which they said Mrs. Howard made to them, indicating that he had caught her by the hair and jerked her down. Two or three of these witnesses were permitted to testify to statements made by Mrs. Howard to. them, which would indicate that appellant had assaulted her. This testimony should have been excluded on the objection of appellant. Bills of exception were reserved on various grounds. These rulings of the court necessitate a reversal of the judgment. The testimony was purely hearsay. This is so obviously so, it is unnecessary to cite authority. Without these hearsay statements of the alleged assaulted party, the state does not show, except as above stated in this opinion, that there was any assault made. The court in his charge gave all the definitions of assault, among others, the use of a deadly weapon, etc. There was no evidence in the case that any deadly weapon was used, nor any intimation even from the hearsay statements. These bills, with reference to the hearsay statements of Mrs. Howard as to what the defendant did to her, show they were made in his absence and over his objection. It is deemed unnecessary to go into a discussion of these matters. Such hearsay statements are not admissible, and should have been excluded.

The judgment is reversed, and the cause remanded.

---

SMIDDY et al. v. CHAPMAN. (No. 1422.)

(Court of Civil Appeals of Texas. Texarkana. March 8, 1915. Rehearing Denied March 18, 1915.)

VENDOR AND PURCHASER &infin;228—ESTOPPEL— BONA FIDE PURCHASER.

Where the defendant purchased land with notice that a deed of release of a valid lien executed by a former owner and placed of record had been executed by mistake, such deed worked no estoppel in favor of defendant as against plaintiff retaining and claiming a lien upon the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. &infin;228.]

Appeal from District Court, Hopkins County; Wm. Person, Judge.

Action by W. J. Chapman against Thomas J. Smiddy and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

D. Thornton, of Sulphur Springs, for appellants. R. D. Allen, of Sulphur Springs, for appellee.

HODGES, J. The appellee, W. J. Chapman, instituted this suit in the court below against H. W. Chapman, I. J. Wallace, and the appellant Thomas J. Smiddy. The purpose of the suit was to recover a judgment against H. W. Chapman for the sum of $610.-05 due upon a promissory note, and to foreclose a vendor's lien as to all the parties against a tract of 45 acres of land situated in Hopkins county. In a trial before the court without a jury a judgment was rendered in favor of the appellee for the amount of the judgment prayed for and for a foreclosure of the vendor's lien. That portion

of the suit only which sought a foreclosure of the lien was resisted in the trial below.

The facts developed were substantially as follows: W. J. Chapman, S. B. Chapman, and their sister, Mrs. Minnie Page, owned 95 acres of land in Hopkins county, of which that in controversy is a part. They jointly sold this land to H. W. Chapman and J. E. Chapman, and took as a part of the purchase price three promissory notes for $500 each. Each of these joint owners held one of the notes, but it appears that they considered themselves as joint owners in all of them. In the early part of 1904 H. W. Chapman and J. E. Chapman divided the 95 acres of land between them; J. E. Chapman taking 50 acres and H. W. Chapman 45 acres. Some time later J. E. Chapman sold his 50 acres to Walter Page, the husband of Mrs. Minnie Page. Page satisfied the balance due for his land by paying a part and his wife agreeing to relinquish her interest in two of the notes held by W. J. and S. B. Chapman. The latter then became the sole owners of the two remaining notes. After having paid off the purchase money due upon his tract of land, Page desired a release of the vendor's lien theretofore existing. It was agreed by all of the parties in interest that this deed of release should be executed, and Page, accordingly, had one prepared which was signed and acknowledged by the appellee and his brother J. E. Chapman. This deed, however, was destroyed in the burning of Page's residence some time thereafter, and was never recorded. In order to enable Page to procure a loan, he sought and obtained another release similar to the one which had been destroyed. The scrivener who prepared the instrument, however, through a mistake drew it so that upon its face it purported to release the vendor's lien upon the entire 95 acres. Page, without discovering this error, presented the deed to the appellee for his signature, telling him that it released the lien only upon the 50 acres which he (Page) owned. The appellee, it appears, was very busy at the time, relied upon the statement made to him by his brother-in-law, and signed and acknowledged the instrument without reading it. The deed was then sent by mail to S. B. Chapman in Oklahoma for his signature The mistake was discovered by S. B. Chapman, and the attention of Page and the appellee called to it. It was then agreed by the parties that a new deed should be ex-

ecuted correctly describing the land to be released. In accordance with that intention, another deed of release was prepared which purported to release the lien only upon the 50 acres owned by Page, leaving it intact upon the 45 acres which had not then been paid out. By some mistake not explained by the testimony, the erroneous deed was placed of record, instead of the one which the parties really intended should be. Subsequent to this transaction S. B. Chapman died. In November, 1912, his widow, Mrs. E. M. Chapman, joined by her children, brought suit for the balance due upon the note held by her husband. In her petition she alleged that she was the sole owner of that note, and sought a foreclosure of the vendor's lien upon the 45 acres owned by H. W. Chapman and which is the land in controversy. A judgment was rendered in her favor, and at the foreclosure sale thereafter the appellant, Smiddy, became the purchaser. He now claims to hold as an innocent purchaser, by reason of the record showing the release of the original vendor's lien on the entire 95 acres. The appellee, who at that time resided in Oklahoma, knew nothing of the existence of this suit until after the judgment had been rendered and just before the land was to be sold. He attended the sale and gave notice to the appellant, Smiddy, who was intending to purchase the land, of his lien.

There is some controversy between the parties as to just what was said between Smiddy and the appellee in the several conversations which occurred respecting the interest claimed by the appellee. But there was ample evidence to justify the court in concluding as a fact that Smiddy had full notice that the deed of release which had theretofore been placed of record was executed by mistake, and that the appellee still retained and claimed a lien upon the land to secure the unpaid balance due upon the note held by him. A purchase with such notice would deprive Smiddy of any right to claim an estoppel against the appellee because of the condition of the record.

It is unnecessary to discuss the various assignments in detail, as they all present different phases of substantially the same question.

We think the testimony fully justified the court in rendering the judgment he did, and that judgment is affirmed.